UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALAN SHAWN FEINSTEIN,<br>THE ALAN SHAWN FEINSTEIN FOUNDATION,<br>THE FEINSTEIN FOUNDATION, INC.,<br>Plaintiffs,<br>v.<br><br>J. LARRY BROWN<br>Defendant. | CIVIL ACTION No. 03-0436/S |

**DEFENDANT J. LARRY BROWN'S**
**MOTION TO CHANGE SITUS OF TRIAL**

Defendant, J. Larry Brown moves for a change of the situs of trial and jury empanelment in the above-referenced matter for the reasons set forth in the accompanying Defendant's Memorandum In Support Of His Motion To Change Situs of Trial.

Brown adopts and incorporates herein the Affidavit of David A. Kluft and appended exhibits, the Affidavit of J. Larry Brown and appended exhibits, and the affidavits of Stephen Fournier and Lisa Duca.

**Request for a Hearing**

Defendant requests a hearing on this motion.[1]

Dated: May 22, 2006

J. LARRY BROWN
By his attorneys,

Brooks Magratten (CAS)

Brooks Magratten
(RI License # 3585)
VETTER & WHITE
20 Washington Place
Providence, Rhode Island 02903
401-421-3060

John H. Henn
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

[1] Defendant does not request a separate hearing unless the Court deems it necessary. A hearing in conjunction with other proceedings in this matter will be sufficient.

CERTIFICATE OF SERVICE

To:

Mark B. Morse, Esq.
111 Wayland Avenue
Providence, RI 02906

I hereby certify that I served on the above-named counsel of record a copy of the within Defendant J. Larry Brown's Motion To Change Situs of Trial by mailing first class mail, postage prepaid, on the 22nd day of May, 2006.

Lisa A. Lariviere

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALAN SHAWN FEINSTEIN,<br>THE ALAN SHAWN FEINSTEIN FOUNDATION,<br>THE FEINSTEIN FOUNDATION, INC.,<br>Plaintiffs,<br>v.<br><br>J. LARRY BROWN<br>Defendant. | CIVIL ACTION No. 03-0436/S |

**DEFENDANT J. LARRY BROWN'S MEMORANDUM IN SUPPORT OF MOTION TO CHANGE SITUS OF TRIAL AND JURY EMPANELMENT**

Defendant J. Larry Brown's ("Brown's") Motion to Change the Situs of Trial and jury empanelment in the above-captioned matter should be granted for two reasons. First, **"naming"** is one of the key issues in this case bearing on the breach of contact claims. The ubiquitous geographic presence of A. Feinstein's **name** all around the courthouse, and all around the city of Providence, makes it nearly inconceivable that the Court will be able to prevent prejudicial evidence bearing on "**naming**" from coming before the jury during the time of empanelment and trial. Second, this prejudicial evidence, directly pertinent to specific issues in this case, has already tainted the Rhode Island jury pool beyond the Court's ability to guarantee Brown a fair trial. Changing the location of trial, but not the venue, is not unknown. Judge Lisi recently elected to change the situs of trial for a case to the federal courthouse in Worcester, MA.

## Background[1]

On August 28, 2003, Plaintiffs Alan Shawn Feinstein ("A. Feinstein"), the Alan Shawn Feinstein Foundation and the Feinstein Foundation, Inc. (collectively "Feinstein") filed suit against Brown in state court, which Brown removed. Brown filed suit against the same plaintiffs in the District of Massachusetts, based on the same underlying facts. Brown moved that venue be transferred to Massachusetts, which this Court denied, holding that Feinstein's Rhode Island suit was "first-filed," a status that was not defeated by considerations of "convenience" . *Feinstein v. Brown,* 304 F. Supp. 2d 279, 281 (D. R.I. 2004).

On May 11 2006, this Court granted Brown's Motion for Summary Judgment in part, dismissing Feinstein's defamation and tortious interference claims. However, the parties' claims based on the March 17, 2000 contract ("Contract") remain intact. Feinstein's breach of contract claim, and defense to Brown's breach of contract counterclaim, alleges Brown's failure to "allow naming rights to the Center." Complaint at ¶ 19.[2] In its Memorandum and Decision on Brown's Motion for Summary Judgment, this Court found that the contract's silence regarding the "anticipated permanence" of naming rights was an "important ambiguity," the "resolution of [which] is a question for the jury." *Feinstein v. Brown,* No. 02-436 at 29 (D. R.I. May 11, 2006). A further explanation of the "naming" issue is critical to an understanding of the unfair evidentiary prejudice Brown will face if the trial proceeds in Rhode Island.

[1] A more detailed summary of facts is contained in Brown's Statement of Material Facts As To Which There Is No Genuine Issue, filed June 30, 2005 in support of Brown's Motion for Summary Judgment.

[2] Feinstein also claims that Brown failed to "secure commitments for celebrity challenges" and to ensure that funds raised in connection with the Contract were properly utilized. Complaint at ¶ 19.

*Feinstein's Naming Rights Claim*

In the Contract, the parties agreed that Brown, in return for financial support from Feinstein in the amount of three million dollars, would oversee a three-year national program "designed to end hunger in America." The Contract also provided that:

> At the discretion of Feinstein, and to be determined by him, Brown's Center will be named after Alan Shawn Feinstein [e.g. "Feinstein Center on Hunger and Poverty"]. Any other name associated with the Center shall require the concurrence of both Feinstein and Brown. Such naming opportunity shall remain available to Feinstein whether or not Brown's program remains at Tufts University or moves to another non-profit institution, to be decided by Brown.

The parties dispute both the import and interpretation of this provision as well as whether Brown complied with it. Brown claims that *permanent* naming rights were not contemplated by the contract, and that in any event he did offer such permanent naming rights to Feinstein.[3] Feinstein, on the other hand, claims that permanent naming rights were the proverbial 'heart of the contract,' and that "the practice among institutions are that naming rights to a Center are *always* permanent."[4] In support of his "naming" claim, Feinstein has offered, *inter alia,* the affidavit of Joseph Goldblatt, a former Dean of the Alan Shawn Feinstein Graduate School at Johnson & Wales University, who will presumably testify about "accepted customs and practices" related to institutional donations and the associated naming rights.[5] At trial, Brown expects Feinstein to offer in evidence additional testimony and documentation to bolster

---

[3] Although Feinstein claims that Brown did not offer naming rights, he has also stated that naming rights were offered but rejected because the Contract required an endowment. Brown maintains that no endowment was contemplated by the parties, as is evidenced by the Contract itself. *See* Brown's Statement of Material Facts, ¶¶ 50-52, filed June 30, 2005 in support of Brown's Motion for Summary Judgment..

[4] Plaintiffs' Memorandum in Support of Their Objection to Defendant's Motion for Summary Judgment, p. 10.

[5] Brown notes that Goldblatt claims no personal knowledge of the events at issue in this case, and that Goldblatt's career as an academic does not qualify him as an expert on institutional giving or naming rights.

arguments about his contractual expectations and his view of the "customs and practices" pertinent to naming rights in the institutional and academic context.

*Prejudicial and Unmanageable Visual Evidence Respecting Naming Rights*

Rhode Island is home to just over one million people, living within a territory of only one thousand square miles.[6] This space is inhabited by omnipresent iterations of the Feinstein family name. (Kluft Aff., Ex. C)[7]. On deposition, Feinstein, unable to remember a complete list at one time, was still able to list over twenty Rhode Island institutions bearing his own name or that of members of his immediate family. (Kluft Aff., Ex. D).

Not surprisingly, the highest concentration of the Feinstein name appears inside the Providence metropolitan area, and much of it is visually apparent to any juror coming to or from the federal courthouse in Providence. There is perhaps nothing more conspicuous than the *Feinstein IMAX* theatre, located in a popular mall and with signs visible from I-95. In addition, within **walking** distance from the Courthouse lie the *URI Feinstein Providence Campus* (whose site also publicly displays signs for the *Alan Shawn Feinstein College of Continuing Education*, *The Feinstein Center for a Hunger Free America*, and the *Dr. Pat Feinstein Child Development Center*), a permanent memorial statue in honor of *Lillian Feinstein,* and the *Louis Feinstein Legal Clinic*. In addition, bus shelter poster with Feinstein's face and name are on display throughout the city, including periodic appearances at the bus shelter across the street from the building where this Court sits. (See Kluft Aff., Ex. B).

Within five miles of the courthouse, the Feinstein name is similarly prevalent in connection with local universities such as *Providence College* (*Feinstein Academic Center*

---

[6] U.S. Census Bureau 2004 Estimates, *available at* http://quickfacts.census.gov/qfd/states/44000.html.

[7] Citations to "Kluft Aff." or "Brown Aff." and accompanying exhibits refer to the Affidavits of David A. Kluft and J. Larry Brown, both submitted in support of this motion.

*Building, Feinstein Institute for Public Service*), *Johnson & Wales University* (*Alan Shawn Feinstein Graduate School, Feinstein Community Service Center*), and *Rhode Island College* (*Feinstein College of Education*), as well as the *Sandra Feinstein-Gamm Theatre*, whose productions are the subject of numerous theatre reviews and newspaper listings. Lesser known , but conspicuously located, institutions further dot the Providence landscape, such as the *Feinstein High School* on Elmwood Avenue, the *Lillian Feinstein Senior Center* on Chalkstone Avenue, and the *Alan Shawn Feinstein Elementary School* on Broad Street. (Kluft Aff., Ex. A). In addition, a motorist or commuter to the area (as many jurors will be) will observe centrally located highway exit signs bearing Feinstein's name, bus shelter posters, and quotations affixed to schools buildings (Kluft Aff., Ex. B)[8], all further evidencing the Feinstein name's connection with various Rhode Island Institutions.

Beyond Providence, the Feinstein name is equally prominent in connection with named Rhode Island institutions and buildings such as the *Alan Shawn Feinstein School* in Central Falls, *Feinstein Hall* and *Feinstein College of Arts and Science* at Roger Williams University, and the *Feinstein Building and Feinstein Center for Service Learning* at URI. Of course, also included in this list should be the eponymous foundations who are parties in this very case.[9]

The effect of all this extraneous material is more than subliminal. Feinstein's eleemosynary activities and the accompanying "naming rights" have become a subject of public forum discussion among Rhode Island residents. For example, a column in the Providence

---

[8] According to the Federal Department Education, Rhode Island is home to 527 public and private schools, grades PK-12. *See* National Center for Education Statistics Search Page, *available at* http://nces.ed.gov/ccd/schoolsearch. According the Feinstein Foundation, over half of these schools participate in programs run by the Feinstein Foundation. Feinstein Foundation Home Page, Education, *available at* http://www.feinsteinfoundation.org/ Educational.htm. Many of these schools place the name "Alan Shawn Feinstein" in highly visible locations on the outside wall of the school building facing a public street, along with a quotation by A. Feinstein. (Kluft Aff., Ex. B). Brown has identified six of these schools but does not have the resources to compile a complete list.

[9] These institutions further reiterate their connection to the Feinstein name on their websites.

Phoenix commented that "the billboards and plaques posted throughout the state featuring quotes from Alan Shawn Feinstein, the ubiquitous Biggest Little philanthropist . . . have become so omnipresent that we figure the next logical step would be to rename the state, 'Rhode Island and Feinstein Plantations.'"[10] A letter printed in the Providence Journal suggested solving Cranston's fiscal crisis by selling its naming rights and changing the city's name to "Alan Shawn Feinstein, Rhode Island."[11] Even the Louis Feinstein Alzheimer's Center, when announcing its decision to change its name, stated that "[r]esearch for the fundraising campaign showed that the Feinstein name was associated in people's minds with the idea that the institution was fully funded and did not need additional support." (Kluft Aff., Ex. E).[12]

Defendant's own survey research bears out the foregoing anecdotes, indicating that 94% of prospective jurors recognize the Feinstein name, primarily in connection with named charitable endeavors, and nearly 75% already have a positive image of A. Feinstein. (Brown Aff.)[13] Even when not directly questioned on the topic, Defendant's survey data reveals that many residents have already given considerable thought to the omnipresence of Feinstein's name in their state. (Brown Aff. & Ex. A). Although no question in defendant's survey addressed naming rights, survey respondents volunteered such statements as "puts his name on everything he contributes to," "he likes to have his name put on a lot of things," "not a quiet philanthropist -

---

[10] Providence Phoenix, November 26, 2004, *available at* http://www.providencephoenix.com/features/ p_and_j/ documents/04283697.asp. This moniker has been reiterated by the Providence Phoenix several times.

[11] Providence Journal, April 27, 2002, *available at* http://www.projo.com/opinion/letters/ content/projo_20020427_ goldenber.b1023.html.

[12] None of the foregoing takes into account A. Feinstein's presence on local television, his name as used in connection with national programs, or the international publicity Plaintiffs recently garnered through the sale of the infamous (to New Englanders) "Babe Ruth Contract."

[13] A full copy of all survey data has been provided to Feinstein's counsel.

never anonymous," and "I think he is most concerned with having his name out there." (Brown Aff. & Ex. A).

**Argument**

***The Feinstein Name: "Whatever You Do, Don't Think About Elephants"***

Naming rights in connection with charitable giving will be an important issue in this case. Evidence going directly to this issue abounds just outside the courthouse and elsewhere all across the state, in the form of buildings, signs and named institutions. (Kluft Aff., Exs. B, C). The names appear to the ordinary viewer to be permanent. Feinstein's arguments regarding expectations as to the permanency and other aspects of naming rights, the "accepted customs and practices" as to naming rights, and even naming rights as to specific institutions, will be potentially bolstered by this evidence. However, this "evidence" will not be *in evidence.*

It is axiomatic that Brown is entitled to a "fair trial, based on information presented according to the rules of evidence." *Markee v. Biasetti,* 410 Mass. 785, 788 (1991) (ordering new trial after unauthorized jury view). The Federal Rules of Evidence provide that "[t]he court shall exercise reasonable control over the mode and order of . . . presenting evidence so as to [] make the interrogation and presentation effective for the ascertainment of truth." Fed. R. Evid. 611(a). Inherent in this mandate is a court's responsibility to exclude evidence that, although relevant, presents a substantial danger of "unfair prejudice, confusion of the issues, or misleading the jury," or constitutes the "needless presentation of cumulative evidence." Fed. R. Evid. 403. At the confluence of these rules is the simple proposition that the Court must not allow prejudicial evidence, improper under Rule 403 even though it may be "relevant" under Rule 402, to pollute the decisions of the jury.

The rationale behind Rules 403 and 611 has been employed to analyze and limit the potential harm of prejudicial demonstrative evidence. *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 331 F. Supp. 2d 136, 139-142 (E.D.N.Y. 2004); *see also* 35 U.S.C.A. § 611, Commentary (2005) (discussing Rules 403 and 611 as used to control and exclude "prejudicial, confusing, or extraneous material"). Moreover, as the newly implemented local rules of this Court acknowledge, the introduction of a subcategory of demonstrative evidence, the "jury view," may be accomplished "only with the prior approval by the Court" and proper notice to all parties. LR Cv 39.1, *effective* January 1, 2006 (placing additional restrictions on jury views not present in the prior rule, LR 16).

Even if the Court approves a jury view, as required by the new Local Rule, it must be carefully supervised. *Clement v. Carnicon-Puerto Rico Mgmt. Assoc. L.C.*, 52 F. 3d 383, 386 (1st Cir. 1995) (enumerating "safeguards" that should accompany jury views). It is well established that unauthorized views by jurors may work a denial of a party's right to a fair trial. *State v. Hartley*, 656 A. 2d. 954, 961 (R.I. 1995); *Garside v Ladd Watch Case Co.*, 24 A. 470, 473 (R.I. 1892) (consideration by jurors of extraneous matter "without the knowledge or consent of either party, is subversive of all rules which govern the admissibility of testimony, and of the right of a fair and impartial trial by jury.")

The extraneous material at issue here is a species of, and analogous to, demonstrative exhibits and jury views. In most cases, such evidence can be carefully controlled by the court, and the opposing party would have the opportunity to respond. However, in these particularized circumstances, it is nearly impossible, and at least a logistic improbability, for a jury member to reside in Rhode Island, *or even simply to travel to the courthouse*, without in doing so *viewing* these demonstrative devices. The evidence at issue here is beyond control of the court, beyond

the knowledge of the litigants, and beyond Brown's ability to meaningfully respond or conduct discovery. In all fairness, Brown should not be burdened with mounting an argument against the dizzying array of brick and mortar exhibits that is lurking outside the courtroom.

The jury cannot be expected to make the "metaphysical distinction" necessary to put out of its mind what they notice with their own senses during an average day in Rhode Island, and what they will inevitably notice and recall with heightened perception once they come to understand the identity of the parties and the facts of the case. *See United States v. Gray,* 199 F. 3d 547, 549 (1st Cir. 1999). Limiting instructions in these circumstances are plainly inadequate and, frankly, likely to further draw the jury's attention to prejudicial evidence in their neighborhoods and on their commuter routes. Such instructions would be the equivalent of telling the jury, "whatever you do, don't think about elephants." Indeed, the present circumstances are more extreme. The jury will see the "elephants" all over the downtown area and beyond. (Kluft Aff., Ex. A).

***The Present Motion is Not a Request that the Court Revisit its Earlier Ruling on Venue***

Accompanying Brown's prior motion for a change of venue, Brown provided a comparative tally of Providence Journal items mentioning Feinstein and Brown. The ratio was about 80 to 1 in favor of Feinstein. The Court, in a footnote, stated that "Feinstein's name recognition, standing alone, is plainly insufficient to tip the balance of convenience in favor of [Brown]." *Feinstein v. Brown,* 304 F. Supp. 2d at 284 n. 3. The present motion, based on distinct factual considerations and issues of law, is not a request that the Court revisit that motion and, of course, does not address venue at all. Venue stays in this District, and Brown does not seek otherwise. The only issue raised here is *where* this Court elects to hold the trial. Brown is merely requesting that the jury does not reside in or have to travel through "Alan Shawn

Feinstein, Rhode Island" on their way to a trial specifically addressing the subject of "Alan Shawn Feinstein" naming rights.

In certain circumstances, courts have responded to extraneous evidence such as prejudicial pretrial publicity by moving the location of a civil trial. *E.g. Washington Public Utilities Group v. United States District Court for the Western District of Washington,* 843 F. 2d 319, 326 (9th Cir. 1987). The extraneous evidence at issue here is more prominent and less ephemeral than mere pretrial publicity, but the analogy is apt. Here, the jury has already been exposed and will inevitably continue to be exposed to extraneous evidence going directly to an issue in this case. Members of the potential jury pool have already contemplated certain aspects of this case (Brown Aff.), in most instances resulting in pre-existing favorable opinions of Feinstein. Such considerations may be reason to move the location of a trial even when venue is not changed. This is admittedly an easier matter in federal districts with multiple courthouses, but even in this District, solutions have been found. E.g. *United States v. Potter,* No. 1:03-cr-0081-ML-1, Pacer Docket Entry, June 23, 2005 (Lisi, J.) (holding D. R.I. trial in Worcester). This Court certainly has the authority and discretion to move the trial site to another courthouse, and Brown respectfully suggests that the Court should do so here.

**Conclusion**

The defendant acknowledges that his request is, while reasonable, unusual. However, Alan Shawn Feinstein is an unusual plaintiff. The point is not merely that he is the proverbial big fish in the small pond, but that the dispute in this particular case addresses the very factors that made him a big fish. In other cases in which A. Feinstein or his eponymous foundations are parties, the trial would no doubt be held in the usual courthouse. But under the circumstances of *this unusual case*, Brown's ability to get a fair trial will necessarily be materially compromised. Defendant's motion to change the situs of trial and jury empanelment should be granted.

Dated: May 22, 2006

J. LARRY BROWN
By his attorneys,

Brooks Magratten (RI License # 3585)
VETTER & WHITE
20 Washington Place
Providence, Rhode Island 02903
401-421-3060

John H. Henn
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

CERTIFICATE OF SERVICE

To:

Mark B. Morse, Esq.
111 Wayland Avenue
Providence, RI 02906

I hereby certify that I served on the above-named counsel of record a copy of the within Defendant J. Larry Brown's Memorandum in Support of Motion To Change Situs of Trial and Jury Empanelment by mailing first class mail, postage prepaid, on the 22nd day of May, 2006.

Lisa A. Lavoie