UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALAN SHAWN FEINSTEIN,
ALAN SHAWN FEINSTEIN FOUNDATION,
and THE FEINSTEIN FOUNDATION

VS C.A. No. 03-436S

J. LARRY BROWN, Alias

**PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION FOR CHANGE OF SITUS**

Now come the Plaintiffs and herein object to Defendant's Motion for Change of Situs. In support, Plaintiffs have attached a memorandum of law.

**Plaintiffs request that this matter be scheduled for hearing.**

Plaintiffs,
By their attorneys
Law Office of Mark B. Morse

Mark B. Morse
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555
fax: (401) 273-0937
email: mark@morselawoffice.com

CERTIFICATION

Brooks Magratten, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

John H. Henn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

I hereby certify that a true and accurate copy of the above was mailed to the abovenamed attorneys of record.

Date: 5-31-06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALAN SHAWN FEINSTEIN,
ALAN SHAWN FEINSTEIN FOUNDATION,
and THE FEINSTEIN FOUNDATION

VS C.A. No. 03-436S

J. LARRY BROWN, Alias

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO DEFENDANT'S MOTION FOR CHANGE OF SITUS**

**Facts/Travel**

The facts and travel of this case are known to the Court. On or about September 3, 2003 Plaintiffs commenced a claim in Rhode Island Superior Court in three counts seeking damages for defamation, interference with contractual relations, and breach of contract. The claims were based on a March 17, 2000 contract between The Alan Shawn Feinstein Foundation, Alan Shawn Feinstein and the Defendant whereby the Plaintiffs pledged three one million dollar grants to be matched against celebrity challenges. Plaintiffs were additionally provided naming opportunities at the institution which was to be the recipient of the funds. After a dispute arose over Defendant's compliance with his obligations under the contract, the Defendant published a letter to the Rhode Island Foundation which Plaintiff contended was defamatory and caused a dissolution of the relationship between the plaintiffs and the Rhode Island Foundation[1] .

On September 10, 2003, Defendant filed suit in United States District Court, Massachusetts seeking a declaration that Plaintiffs' defamation and interference claim were without merit, and claiming his own breach of contract. Defendant quickly followed on September 25, 2003 with a motion to remove Plaintiffs' claims to this Court, then, once removed,

[1] Plaintiffs counts for defamation and interference with contractual relations were dismissed per the Court's decision dated May 11, 2006.

filed a motion to transfer Plaintiffs' complaint to the District of Massachusetts on the grounds that Defendant was the first filed in federal court, and venue was therefore proper in Massachusetts . In support of his motion to dismiss and transfer venue, Defendant argued *inter alia* that Plaintiffs had filed a preemptory suit, and that the notoriety and good will which Plaintiff established in Rhode Island would prevent Defendant from obtaining a fair trial in Rhode Island. On February 11, 2004 this Court denied Defendant's Motion to Dismiss and Change Venue holding that the first filed rule related back to the date Plaintiffs filed their claim in Rhode Island state court, that Plaintiffs' suit was not preemptive, and that the fact that Plaintiff was well known in Rhode Island did not justify a change of venue to Massachusetts. *Feinstein v Brown*, 304 F.Supp 2d. 279, 284 n.3 (D.R.I. 2004).

The motion now before the Court brings the case full circle. Although styled as a Motion to Change Situs, the effect of the motion is that which would occur in a change of venue.

In support of his motion, Defendant provides the results of a survey undertaken at the behest of Defendant. The survey was taken under the direction of Stephen Fournier, a colleague of the Defendant who, like the Defendant, is on the faculty of the Heller School for Social Policy and Management at Brandeis University, the very same institution which would reap the benefits of Plaintiffs' funding. According to the Defendant, the survey shows that Alan Shawn Feinstein has developed a reservoir of good will and notoriety in Rhode Island. According to Defendant, this establishes that he cannot receive a fair trial in Rhode Island.

Furthermore, Defendant claims that a fair trial cannot be had in Rhode Island, due to the presence of facilities or institutions bearing Alan Shawn Feinstein's name in an area in close proximity to the courthouse. Defendant claims that a major issue to be decided by the jury is whether naming rights were a material issue in the contract between Plaintiffs and the Defendant, and that the effect of so many institutions or facilities bearing Plaintiff's name, according to

Defendant, is tantamount to providing the potential jury pool with an unauthorized view of demonstrative evidence, which under the newly revised local rules can only be accomplished with prior notice and approval of the court, Local Rule Civ. P. 39.1.

Finally, the Defendant argues that his motion is not what it appears to be--one to change venue. Rather, the Defendant insists it is a motion to change the situs of the trial, but not the venue of the trial.

**Private Surveys are not a Proper Substitute for Voir Dire.**

Each of the arguments are without merit. Principally, Defendant's arguments fail because he seeks to substitute his own uncontrolled private survey for voir dire procedures established through Court rules and law. Courts have consistently held that private surveys are not a proper substitute for voir dire.

In the case of *Shapiro v. Kaufman*, 855 F.2d. 620 (8th Cir. 1988) the Plaintiff brought claims alleging, *inter alia* breach of contract and intentional interference with contractual relations arising from the sale of the Kansas City Royals baseball franchise. Plaintiff sought a change in venue based upon a public opinion poll which he presented to the Court on the first day of trial. The poll purported to show that 79% of the population had a favorable attitude toward defendant Kaufman, and that over 90% of the local population had a favorable view of the Royals. Based on these results, the plaintiff was prepared to offer expert testimony that the Plaintiff could not receive a fair trial in Kansas City. *Id.* 855 F.2d at 620-21. The District Court denied plaintiff's motion for a change of venue, and on appeal from a defendant's verdict the plaintiff alleged error in the Trial Court's refusal to transfer venue. In its affirmance of the district court decision, the Eighth Circuit noted:

> Public opinion polls introduced with the purpose of demonstrating jury

> bias have found little favor with the courts. *See United States v. Haldeman*, 559 F.2d 31, 64 n. 43 (D.C.Cir.1976) (public opinion poll results open to a variety of errors), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *accord*, *United States v. Chagra*, 669 F.2d 241, 252 (5th Cir.), *cert. denied*, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982); *see also United States v. Mandel*, 431 F.Supp. 90, 100-01 (D.Md.1977) (public opinion poll no substitute for voir dire examination); *United States v. Means*, 409 F.Supp. 115, 116-17 (D.N.D.1976) (fair trial may be had in spite of local prejudice revealed through opinion poll).
> *Id.* 855 F.2d. at 621.

The Eighth Circuit examined the record in *Shapiro*, and concluded that following the survey, the trial judge conducted a voir dire asking each potential juror about his or her association with the parties, and generally whether he or she knew or had heard anything that would cause that juror to be unable to give both sides a fair trial. At the request of the plaintiff's counsel, the trial judge asked whether any member would be unable to give a fair trial because of favorable publicity, and individual voir dire was conducted with any juror who answered affirmatively. *Id.* Based on the above, the Eighth Circuit concluded that a fair trial was conducted, notwithstanding the favorable attitudes displayed toward the Defendants.

In *United States v. Means*, 409 F.Supp. 115, 116-17 (D.N.D.1976) , Defendant sought a change of venue based on affidavits presented from people who conducted a survey which purported to establish a broad negative association with Wounded Knee, Russell Means, and the American Indian Movement (AIM). The *Means* Court denied the motion to change venue based on its in-court examination of the persons who prepared and signed the affidavits as to their experience in court, and their confidence in the ability of jurors selected through the voir dire process to "recognize and discipline their prejudices, and make factual judgments from the evidence before them" 409 F. Supp at 116. The Court noted the variety of techniques available to the court to assist the court in selection of jurors including, allowing the attorneys to participate in voir dire, increasing the number of peremptory challenges, or allowing individual

voir dire. *Id.* at 417. Although not mentioned by the *Means* Court, an additional method of assisting the Court in determining jury bias is the use of juror questionnaires presented by counsel to the Court to administer under its direction and control. *See United States v Potter* , 94 F.Supp.2d. 475, 477 (D.R.I. 2005) ("Prior to jury impanelment, the Court distributed a juror questionnaire to all prospective jurors included in the jury venire.")

The *Means* Court noted a change of venue as an alternative, but denied the Defendants' motion to change venue. The Court held that changing venue on insufficient cause was inconsistent with Art. III ¶ 2 of the United States Constitution which assured proper venue in a criminal prosecution, and inconsistent with the Sixth Amendment of the Constitution rights as a vicinage assurance (selection of jurors from the place where the offense had been committed). *Id.*

In *United States v. Haldeman*, 559 F.2d 31, 64 (D.C.Cir.1976) (the Watergate case) the D.C. Circuit found that the trial court was justified in discounting the value of an extra-judicial use of a survey questionnaire to root out juror bias. The D.C. Circuit remarked:

> It is our judgment that in determining whether a fair and impartial jury could be empanelled the trial court did not err in relying less heavily on a poll taken in private by private pollsters and paid for by one side than on a recorded, comprehensive voir dire examination conducted by the judge in the presence of all parties and their counsel pursuant to procedures, practices and principles developed by the common law since the reign of Henry II.

Indeed, a cursory examination of the survey used by the Defendant in the instant matter raises doubts as to its appropriateness in determining jury bias. The very first question listed on the survey tells the examiner to ask "Have you ever heard of someone in RI by the name Alan Shawn Feinstein?" The examiner is directed to "Record Yes or No, and any comments offered, e.g. "his picture is all over," etc. *If answer is No or Not Sure, remind them that his name is on buildings and programs about hunger and children. If still no knowledge, discontinue survey.*" Defendant's Motion to Change Situs of Trial, Exhibit A (emphasis added). If ever there was a

identified with the case. The question of whether they must be eliminated from the background is the same question which the Court faces in each instance it is called upon to determine whether a change in venue is proper.

In *Marcauage v. Board of Trustees of Temple University*, the Eastern District of Pennslyvania held that "jurors are not required to be completely ignorant about a case." 400 F. Supp. 2d 801, 805 (E.D.P.A. 2005). The Court noted that "even if a juror did have some information, a court cannot invalidate a verdict merely because a juror had some generalized knowledge about the parties which may have played a part in the juror's decision." *Id.* Indeed often jurors may have "some general knowledge about the parties" simply as a result of residing in the same community as the party, however this is not enough to invalidate the jury pool. *Id.* While considerations of any possible prejudice are important, they are properly dealt with not by changing the forum, but rather during the jury selection process. *Id.* at 806.

In the case of *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 395 (3d Cir. 1999) the court denied that juror conduct was improper when a juror drew on personal experience as an owner of the allegedly defective product at issue. In *Bibbins v. Dalshiem,* 21 F.3d 13, 17 (2d Cir. 1994) , following a criminal conviction, defense counsel attempted to impeach the jury verdict by an affidavit that a juror had commented to others in the panel about her familiarity with the area in question. The Court noted that observations "concerning the life of [the] community is part of the fund of ordinary experience that jurors may rely upon."

Thus, familiarity with the parties or the locale is not in and of itself sufficient cause to change venue. The question of whether the notoriety of Alan Shawn Feinstein compels a change in venue thus should be tested pursuant to the framework and precedent already established by the Court, and not by some novel notion that the presence of the Plaintiff's name is akin to a jury view.

**Defendant's Motion Though Styled as a Motion to Change Situs is a Motion to Change Venue.**

Though Defendant styles his motion as one to "change situs" of the trial, the motion nonetheless retains the characteristics and effect as one to change venue. The only legal authority offered by the Defendant that his motion is one to change situs, but not venue, is the case of *United States v. Potter*, 03-081 ML (D.R.I. 2006) a case emanating from the District of Rhode Island, but heard by Judge Lisi in Worcester, Massachusetts.

To the extent that the *Potter* case is relied on as a basis to change situs, it is not only distinguishable, it does not support Defendant's arguments. First, the motion to have the case heard in Worcester was a motion to change venue, not change in situs. *See Potter* , 394 F.Supp.2d. 475 (D.R.I. 2005) (referring to the Defendants' Motion as one to change venue). Second, the Defendant cites no reference as to what factors the Court considered in changing the venue to Worcester, Massachusetts. Defendant's Motion is devoid of any analysis upon which the Court can rely to determine what factors the Court considered to move the case to Worcester, Massachusetts. Third, the case involved a criminal prosecution, not a civil matter, compelling a different analysis as to whether venue should be changed. *See United States v. Means*, 409 F.Supp. 115 (D.N.D.1976).

To the extent that the factors considered by the *Potter* Court are analogous to those factors requested by the Defendant for the Court to consider, the decision to change venue was made by the Court only after alternatives to a change in venue were ruled out by the Court. The alternatives considered by the Court were made, not as the result of a private survey, but consistent with results obtained during the voir dire process. In order to determine whether juror bias existed, the Court employed a larger than usual venire , used a jury questionnaire, and

conducted individual voir dire. *Id*, 394 F.Supp.2d at 478. Only after employing these processes, did the Court determine that a fair trial dictated a change in venue to Worcester, Massachusetts. Importantly, the Court did not rely on an untested survey taken at the behest of the party seeking the change in venue. Accordingly, the *Potter* case , cited by the Defendant in support of his motion, lends nothing to his argument.

**Factors Compelling a Change in Venue.**

The law is clear on what should be considered to change venue in a civil case. In a civil case "[A] district court may transfer [a] civil action to any other district or division where it might have been brought" if it is necessary "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404. "The burden of proof rests with the party seeking transfer," and "there is a strong presumption in favor of the plaintiff's choice of forum." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.. 501, 508 (1847)).

Whether to allow any change of venue is a matter within the sound discretion of the trial court. *Coady*, 223 F.3d at 11. Although the Court should consider the advantages and obstacles to a fair trial, it is only one of several factors the Court should consider when ruling on a change in venue. Factors warranting a change in venue include: "(1) the ease of access to sources of proof; (2) the availability of compulsory process to compel the attendance of witnesses; (3) the cost of attendance of willing witnesses; (4) the ease of view of any premises; (5) the enforceability of the judgment, if obtained; (6) the advantages and obstacles to a fair trial; (7) the status of the court's trial calendar; and (8) the familiarity of the forum with the applicable state law. *McGlynn v. Credit Store, Inc.*, 234 B.R. 576, 582 (D.R.I. 1999) (citing *Gulf Oil*, 330 U.S. at 508; *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

In this case, this Court has already ruled on several of the factors. This Court has already stated that "[t]here are witnesses and documents in Rhode Island and Massachusetts, both of which have connections to the claims in the case, and the fora are close enough not to implicate concerns of subpoena power or any appreciable inconvenience to either side," and in a footnote concluded that "Feinstein's name recognition, standing alone, is plainly insufficient to tip the balance of convenience in favor of Defendant." *See Feinstein v. Brown*, 304 F.Supp.2d 279, 284 n.3 (D.R.I. 2004).

Throughout, the Defendant has failed to demonstrate that he cannot have a fair trial in Rhode Island. His survey does nothing more than establish that which the Court has already concluded, that Alan Shawn Feinstein is well known in the State of Rhode Island.

Concededly, Plaintiffs are better known in Rhode Island than is Defendant. However, alleged greater fairness of having a case tried in a "neutral" forum rather than in the forum in which one of the parties transacts its principal business is not a matter meriting serious consideration in proceedings on a motion for transfer. *See Early & Daniels Co. v. Wedgefield, Inc.*, 164 F.Supp. 414 (M.D.N.C. 1958).

Furthermore, the Court should consider fairness to the public in this case. Local jurors are better equipped than juries in other locations to decide factual issues requiring an application of community standards. *See Chance v. E.I.. Du Pont De Nemours & Co., Inc.*, 371 F.Supp. 439 (E.D.N.Y. 1974).

The Court's conclusion that the Plaintiff's name recognition alone, is insufficient to justify a change in venue is well supported. Even in the Middle District of Florida, where Disneyworld dominates the livelihoods and financial security of many, the Court held that a change in venue is not necessary. In *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*, 734 F.Supp 54 (ND NY 1990), the District Court for the Northern District of New York, in

granting a co-defendant's motion for transfer to Florida, held that a fair minded jury could, indeed, be drawn from the Middle District of Florida even though the defendant, Walt Disney, "was looked upon with favor by people of central Florida," who "might thus be unduly friendly to the defendants." If a party can get a fair trial against Walt Disney in central Florida, certainly Brown can get a fair trial against Feinstein in Rhode Island.

**Conclusion**

Defendant's use of a private survey, standing alone, is inappropriate to use as a basis to change venue. The presence of Plaintiff's name in the vicinity of the courthouse does not compel a change in venue. Though Defendant styles his motion as one to change situs, it is nothing more than a thinly disguised attempt to once again, change the venue of the trial. The Court has already considered a number of factors as to whether the venue of the trial should be changed. Should the Court which to revisit the issue, it should do so only after an examination through the voir dire process, using the alternatives such as a more extensive venire, jury questionnaire, or individual voir dire, as may be necessary, to root out whether jury bias would prevent a fair trial. Defendant's motion should be denied.

Plaintiffs,
By their attorneys
Law Office of Mark B. Morse

Mark B. Morse
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555
fax: (401) 273-0937
email: mark@morselawoffice.com

**CERTIFICATION**

Brooks Magratten, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

John H. Henn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

I hereby certify that a true and accurate copy of the above was mailed to the abovenamed attorneys of record.

Date: May 31, 2006

____________________